No. 19-1855

In the

# United States Court of Appeals
## For the Federal Circuit

———————————

SPRINT SPECTRUM L.P.,

*Appellant,*

v.

GENERAL ACCESS SOLUTIONS, LTD.

*Appellee.*

———————————

ON APPEAL FROM THE U.S. PATENT AND TRADEMARK OFFICE
Case No. IPR2017-01889

———————————

**APPELLANT'S REPLY BRIEF**

———————————

Brian D. Schmalzbach
David E. Finkelson
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Telephone: (804) 775-4746
Facsimile: (804) 698-2304
bschmalzbach@mcguirewoods.com
dfinkelson@mcguirewoods.com

*Counsel for Appellant Sprint Spectrum L.P.*

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ...................................................................................1

ARGUMENT ........................................................................................2

I.   The Board Improperly Narrowed the Scope of "First Beam Map Containing Scanning Beam Information Usable By Said Wireless Access Device to Detect Said Directed Scanning Beam" by Excluding Other Embodiments. ..................................................................2

    A.   The Board's Narrow Claim Construction Rests on the False Premise that the Embodiments in the '931 Patent Are Mutually Exclusive. ...........................................3

    B.   The Board's Narrow Claim Construction Improperly Assumes That Claim 2 is Limited to a Single Exemplary Embodiment of the '931 Patent.............7

    C.   It is Undisputed that Vornefeld Discloses Scanning Beam Information Usable by a Wireless Access Device to Detect a Directed Scanning Beam Signal. ........11

II.   The Board Improperly Disregarded Dispositive Evidence That The Claims Are Obvious Even Under The Board's Improper Construction..................................................12

    A.   GAS Did Not "Simply Argue" That Sprint's Evidence Failed to Disclose Scanning Beam Information Usable to Detect Directed Scanning Beam Signals. ..........................................................12

    B.   This Court's Reversal of the Board in Ericsson Controls Here.......................................................15

III.   The Board's Decision Finding Claims 28 and 29 Not Unpatentable Lacks Substantial Evidence...................19

CONCLUSION .....................................................................................22

# TABLE OF AUTHORITIES

## Cases

*Continental Circuits LLC v. Intel Corp.,*
   915 F.3d 788 (Fed. Cir. 2019) .............................................................5

*Epos Techs. Ltd. v. Pegasus Techs. Ltd.,*
   766 F.3d 1338 (Fed. Cir. 2014) ........................................................11

*Ericsson Inc. v. Intellectual Ventures I LLC,*
   890 F.3d 1336 (Fed. Cir. 2018) ........................................................21

*Ericsson Inc. v. Intellectual Ventures I LLC,*
   901 F.3d 1374 (Fed. Cir. 2018) ........................................2, 15, 16, 17

*In re Gartside,*
   203 F.3d 1305 (Fed. Cir. 2000) ........................................................21

*Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.,*
   821 F.3d 1359 (Fed. Cir. 2016) ..................................................17, 18

*Oatey Co. v. IPS Corp.,*
   514 F.3d 1271 (Fed. Cir. 2008) ..........................................................5

*Retractable Techs., Inc. v. Becton, Dickinson & Co.,*
   653 F.3d 1296 (Fed. Cir. 2011) ..........................................................1

*In re Smith Int'l, Inc.,*
   871 F.3d 1375 (Fed. Cir. 2017) ..................................................10, 12

## Other Authorities

37 C.F.R. § 42.23(b) ...........................................................................16, 17

## INTRODUCTION

Rather than adopt the broadest reasonable construction of "scanning beam information usable by said wireless access devices to detect said directed scanning beam signals" in the '931 Patent, the Board limited the term to a single embodiment associated with one Figure of the '931 Patent. That gerrymandered construction excluded another embodiment outright, as the Board acknowledged.  But neither the Board nor GAS identify any "clear and unmistakable" disclaimer required by this Court to justify limiting the claims to a single embodiment.  *See Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011) ("To disavow claim scope, the specification must contain 'expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope'").  Applying the broadest reasonable construction indisputably renders the claims of the '931 Patent obvious.

Even under the Board's improper narrow construction, Sprint's evidence still renders claims 2, 11, and 20 obvious.  The Board's refusal to consider that evidence was error.  Sprint's evidence was necessary to respond to the eleventh-hour claim construction argument GAS introduced *after* institution.  Those are the same circumstances that required this Court

1

to reverse the Board in *Ericsson Inc. v. Intellectual Ventures I LLC*, 901 F.3d 1374 (Fed. Cir. 2018), and that decision controls here.  The Court should vacate the Board's decision to turn a blind eye to evidence offered at the first opportunity in response to a new proposed claim construction.

Finally, the Board's finding that Vornefeld discloses "spatially-separated frames" finds no support in the reference itself.  Instead, the overwhelming weight of the evidence directly contradicts the Board's conclusion.  The only "evidence" favoring the Board's position is the conclusory assertion of GAS's expert, which is not substantial evidence.  This Court should vacate the Board's decision.

<u>ARGUMENT</u>

I.    **The Board Improperly Narrowed the Scope of "First Beam Map Containing Scanning Beam Information Usable By Said Wireless Access Device to Detect Said Directed Scanning Beam" by Excluding Other Embodiments.**

The Board erred by rejecting the broadest reasonable interpretation of claims 2, 11, and 20.  Instead, the Board adopted a construction that limits these claims to a single embodiment in the specification of the '931 Patent, to the exclusion of other embodiments.  But the '931 Patent lacks the "clear and unmistakable disavowal" required under this Court's precedent to limit the

2

claims in that way. The Board should have construed "first beam map containing scanning beam information usable by said wireless access device to detect said directed scanning beam" as Sprint proposed: "scheduling information for one or more beams." Under that broadest reasonable construction, there is no dispute that claims 2, 11, and 20 are invalid as obvious.

### A.   The Board's Narrow Claim Construction Rests on the False Premise that the Embodiments in the '931 Patent Are Mutually Exclusive.

The Board and GAS try to justify the narrow construction that excludes certain embodiments by supposing that *no* construction could accommodate all the embodiments. That was error.

The Board incorrectly concluded that because "the '931 patent discloses explicitly that the embodiment in which the scanning beam information identifies a downlink time slot is 'another embodiment' than the embodiment set forth in claims 2, 9, and 11 in which the beam map contains scanning beam information usable to detect the directed scanning beam," the "scanning beam information" recited in claims 2, 11, and 20 *only covers* scanning beam information "that informs the subscriber (wireless access) device which scanning beam is used and when (frame time) in which each

3

beam starts." Appx13-14. GAS tries to justify the Board's error by distinguishing "scanning beam *detection* information" ("scanning beam information that includes data about which scanning beam will be used to cover a particular sector and when it will be used") from "scanning beam *time slot* information" ("scanning beam information that identifies a downstream time slot"). Resp. Br. at 7.[1] According to the Board (and GAS), these different "types" of scanning beam information are mutually exclusive.

Neither the claims nor the specification of the '931 Patent suggest that those two embodiments are mutually exclusive. The '931 Patent describes "one embodiment of the present invention," where the broadcast beam signal "further comprises a first beam map containing scanning beam information usable by the at least one wireless access device to detect the least one directed scanning beam." Appx54, 9:35-39. In "another embodiment of the present invention, the scanning beam information identifies a downlink time slot in the downlink portion during which the at least one directed scanning beam transmits the downlink data traffic."

---

[1] Unless otherwise indicated, all emphasis added.

Appx54, 9:40-44. What the '931 Patent *never* says is that the "scanning beam information" described in the "second" embodiment could *not* be "usable by the at least one wireless access device to detect the at least one directed scanning beam."

As the Board itself acknowledged, its construction of claim 2's "scanning beam information usable . . . to detect said directed scanning beam signals" excludes the embodiment of "the scanning beam information identifies a downlink time slot in the downlink portion." Appx13-14. This is *only* permitted when the "other" embodiment is *clearly disclaimed* in the specification or prosecution history. *See Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1277 (Fed. Cir. 2008) ("[W]e have interpreted claims to exclude embodiments of the patented invention where those embodiments are clearly disclaimed in the specification.").

Here, there is no "clear and unmistakable" disclaimer in the '931 Patent that would exclude the "second type of scanning beam information" (as labeled by GAS) from claim 2's scope. *See Continental Circuits LLC v. Intel Corp.*, 915 F.3d 788, 798 (Fed. Cir. 2019) ("Thus, absent 'clear and unmistakable' language suggesting otherwise, we conclude that the aforementioned statements do not meet the 'exacting' standard required to

limit the scope of the claims to a [given embodiment].")  To the contrary, the evidence from the '931 Patent shows that the "second" type of scanning beam information is "another embodiment *of the present invention*" and is therefore covered by the claims.  Appx54, 9:40-41.

Indeed, the record reveals that "scanning beam information" that identifies downlink time slots of the scanning beam signal intended for a specific wireless access device *would* enable that device to detect that signal (as recited in claims 2, 11, and 20).  As for the claimed "scanning information usable by usable by said wireless access devices to detect said directed scanning beam signals," Sprint's expert, Jim Proctor, testified as follows:

> So strictly speaking, one would not need to include information about the beams themselves to be a beam map in the context of the specification of the ['931 Patent] and that claim in that the claim only requires that the information be usable to demodulate a directed beam signal. So the requirement is that the CPE is being told enough information, whatever that information is, that it can actually use a directed beam signal that's sent that it happens to be in the coverage area of.

Appx1267, 47:2-11.  Proctor testified that to detect a single scanning beam, a terminal "just knows that it has signal or not and it's told to decode it over a particular number of time slots."  Appx1251, 31:3-5. GAS offered no evidence contradicting that conclusion.  Instead, the

Board simply eliminated this evidence from consideration by narrowly construing claims 2, 11, and 20, despite the other embodiment of "scanning beam information" recited in the '931 Patent itself. That was error.

### B. The Board's Narrow Claim Construction Improperly Assumes That Claim 2 is Limited to a Single Exemplary Embodiment of the '931 Patent

The Board's construction rests entirely on the disclosure of the '931 Patent associated with a single, exemplary embodiment of the invention shown in Figure 14 of the '931 Patent. In its brief, GAS states that the Board purportedly "relied on numerous portions of the '931 specification to support its interpretation of the claim language," and not just Figure 14. Resp. Br. at 18-19. GAS is wrong. In fact, the Board stated "the other sections in the '931 patent describing the broadcast beam map all explain that the map contains information that informs the subscriber (wireless access) device which scanning beam is used and when (frame time) in which each beam starts." Appx14 (citing '931 Patent at 29:51-55, 29:66-30:2). Yet, the entire discussion of the "broadcast beam map" in the '931 Patent, which the Board cited to support its construction, is in the context of Figure 14, which "illustrates the use of broadcast beams and scanning beams in exemplary

time division duplex (TDD) signal 1400 *according to one embodiment of the present invention*."  Appx64, 29:3-5.  The '931 Patent then states "*[a]ccording to one embodiment of the present invention*, an exemplary spread spectrum Broadcast Beam is used to transmit the start-of-frame fields (SOF1 and SOF2) and the beam map fields (Beam Map 1 and Beam Map 2) in each TDD frame."  Appx64, 29:26-30.

In the Board's view, "the disclosure of the '931 patent consistently describes that the broadcast beam map is scheduling information that indicates which scanning beam is used at which time."  Appx14 (citing '931 Patent at 29:34-36, 29:51-55, 29:66-30:2).  Yet the Board *never* accounted for the fact that this entire section of the '931 Patent describes "one embodiment of the present invention" and that the '931 Patent goes on to state "[a]lthough the present invention has been described in detail, those skilled in the art should understand that they can make various changes, substitutions and alterations herein without departing from the spirit and scope of the invention in its broadest form."  Appx64, 30:25-29.  *See also* Appx55, 11:48-51 ("FIGS. 1 through 14, discussed below, and the various embodiments used to describe the principles of the present invention in this patent document

8

are by way of illustration only and should not be construed in any way to limit the scope of the invention").

Of course, information that provides data to a wireless access device indicating which scanning beam is used at which time is *one type* of "scanning beam information usable by said wireless access devices to detect said directed scanning beam signals."  Appx64, 30:55-57.  The exemplary embodiment of Figure 14 of the '931 Patent supports this.  The Board erred in leaping to the conclusion that this "data indicating which scanning beam is used at which time" is the *only* type of scanning beam information "usable by said wireless access devices to detect said directed scanning beam signals."  Indeed, the language of claims 2, 11, and 20 is not found in the context of the embodiment of Figure 14 of the '931 Patent.  Nor does the '931 Patent describe the particular advantages of "data indicating which scanning beam is used at which time" over the prior art (e.g., the type of scanning beam information in Vornefeld's FCH).  And even if it did, this would still not rise to the level of "clear and unmistakable" disavowal required by this Court to read claim 2 to be limited to the exemplary embodiment of Figure 14.  *See Cont'l Circuits,* 915 F.3d at 797–98 (finding that statements distinguishing the exemplary embodiment as "contrary to" or "in

stark contrast" with a different process "are not clear and unmistakable limiting statements.")

To the contrary, the '931 Patent states that "[a]ccording to one embodiment, beam switching occurs on a frame-by-frame basis so that for a complete TDD frame, *only one beam is active*."  Appx63, 28:61-63.  Thus, in this embodiment, the "first beam map" of claim 2 could include scheduling information for a single beam.  As testified to by Proctor, it would be unnecessary for the claimed "scanning beam information usable by said wireless access devices to detect said directed scanning beam signals" to include "data indicating which scanning beam is used at which time," because if only a single scanning beam is used, the terminal would only need to be told *when* it should detect that single beam (i.e., in the form of a downlink timeslot).  *See* Appx1251, 31:3-5 (testifying that to detect a scanning beam, a terminal "just knows that it has signal or not and it's told to decode it over a particular number of time slots.")  Thus, construing "scanning beam information usable by said wireless access devices to detect said directed scanning beam signals" to include Vornefeld's FCH would "correspond[] with what and how the inventor describes his invention in the specification." *In re Smith Int'l, Inc.*, 871 F.3d 1375, 1383 (Fed. Cir. 2017).

Here, the Board committed legal error by improperly importing language from one embodiment into its construction of claims 2, 11, and 20. *See Epos Techs. Ltd. v. Pegasus Techs. Ltd.*, 766 F.3d 1338, 1343 (Fed. Cir. 2014) ("The district court erred by importing the word 'conventional' from preferred embodiments into its construction of the term.")  Instead, consistent with the various embodiments of "scanning beam information" in the '931 Patent, the broadest reasonable interpretation of claims 2, 11, and 20 should encompass information identifying a downlink time slot in said downlink portion during which a directed scanning beam signal transmits downlink data traffic for the wireless access device.

### C. It is Undisputed that Vornefeld Discloses Scanning Beam Information Usable by a Wireless Access Device to Detect a Directed Scanning Beam Signal.

It is undisputed that Vornefeld discloses information (in the form of the FCH) identifying a downlink time slot during which a directed scanning beam signal transmits data for a wireless access device.  The Board determined that in Vornefeld, the "FCH is broadcast in the downlink direction and transmits information about the structure of the MAC frame for the up- and downlink phases; it contains announcements and reservations of long and short transport channels the individual MTs have

11

to transmit or receive." Appx16-17. Based on these undisputed facts, the combination of Vornefeld and Andersson renders claims 2, 11, and 20 obvious under the broadest reasonable interpretation of these claims. *See In re Smith*, 871 F.3d at 1384 (reversing where the PTAB's "findings depended on an incorrect claim construction" and where "[i]t [was] undisputed that [the prior art references] do not teach or render obvious the missing elements"). So the Court should reverse the Board's decision and find that claims 2-9, 11-18, and 20-27 of the '931 Patent are obvious under Vornefeld and Andersson.

## II. The Board Improperly Disregarded Dispositive Evidence That The Claims Are Obvious Even Under The Board's Improper Construction.

### A. GAS Did Not "Simply Argue" That Sprint's Evidence Failed to Disclose Scanning Beam Information Usable to Detect Directed Scanning Beam Signals.

Sprint's Opening Brief explained that even assuming the Board's improper narrow construction, the Board should be reversed for ignoring Sprint's evidence of obviousness under that construction. The Board had to consider that evidence because Sprint offered it at the first opportunity after GAS raised the claim construction that it persuaded the Board to adopt.

In its brief, GAS completely ignores the claim construction argument it injected into this proceeding.  Instead, GAS states it "simply argued that, as previously found by the Board in initially denying institution, that the evidence presented by Sprint did not establish that time slot reservations constitute a 'beam map usable to detect directed scanning beam signals.'" Resp. Br. at 24.  GAS misstates the record.  In fact, GAS stated very clearly in its Response "timeslot reservations for the subsequent LCH and SCH signals [of Vornefeld] do not constitute beam map information *indicating the specific beam(s) and their precise start times in the frame which are usable by the wireless access devices to detect the directed scanning beam signals.*"  Appx279.  The "information indicating the specific beam(s) and their precise start times" recited by GAS is not found anywhere in the language of claims 2, 11, or 20 themselves.  Instead, it was imposed on the claims by GAS in its Response (not by the Board in its Institution Decision), based on the embodiment associated with Figure 14 of the '931 Patent.  Appx267-268; Appx1407, ¶¶ 33-34 (citing '931 Patent at 29:34-36, 29:51-61, Figure 14).

GAS also alleges that "the Petition here did not identify with particularity all of the evidence that Sprint now contends is necessary to invalidate the claims."  Resp. Br. at 24.  GAS is incorrect, because Sprint *did*

identify all of the evidence from Vornefeld and Ahy necessary to invalidate claims 2, 11, and 20 under the broadest reasonable interpretation of those claims. Appx99-100, Appx132. Instead, with respect to Ahy, it was *GAS* that first argued "Ahy's start of frame signal includes no information about what scanning beam will be used to cover the sector, or when it will be used. This information would be necessary for the signal to include a 'beam map' containing scanning beam information in a broadcast beam signal." Appx280-281. Again, the Board did not raise this issue in its Institution Decision. Thus, whether the "scanning beam information" in the first beam map *must* define the specific scanning beams used was first introduced by *GAS after* Institution, based on a narrow claim construction.

In response, Sprint was entitled to identify portions of Ahy (which was already evidence of record) that rendered claims 2, 11, and 20 obvious, even under GAS's improperly narrow claim construction. In response to this issue raised by GAS, Sprint expanded on the evidence from Ahy presented in the Petition by identifying an additional "first parameter" in Ahy's TDD frame—the "antenna selection parameter." Appx346 (citing Ahy (Appx1036), 8:53). The antenna selection parameter "includes a choice of which one antenna at the BSC 120 and which one antenna at each CPE 130."

Appx346 (citing Ahy (Appx1036), 8:56-59). Furthermore, it was *GAS*, not Sprint, that elicited testimony from Proctor concerning Ahy's antenna selection parameter. Appx1266, 46:10-12. The Board's decision to foreclose Sprint from responding to new claim construction arguments that GAS introduced, using testimony that GAS itself elicited, was an abuse of discretion.

### B.     This Court's Reversal of the Board in *Ericsson* Controls Here.

The Court's decision in *Ericsson Inc. v. Intellectual Ventures I LLC*, 901 F.3d 1374 (Fed. Cir. 2018) is directly on point. In *Ericsson*, the petitioner had identified "interleaving" in its petition as being known in the prior art. *Id.* at 1377-78. Similarly, Sprint's petition identified parameters in Ahy that were transmitted at the start of frame field from the BSC to the CPE which rendered claim 2's beam map obvious. Appx132.

Next, in *Ericsson*, the patent owner presented a new claim construction argument for the first time in its Response (post-Institution), seeking a construction of the term "encoding" to mean "interleaving packets together." 901 F.3d at 1378. Likewise, in this proceeding, GAS sought a special construction of claim 2's "beam map" to require it to include data identifying specific beams and their start times. Appx279-281.

15

In *Ericsson*, in response to the new claim construction position, the petitioner argued in its Reply that the specific type of interleaving required by the patent owner's newly introduced claim construction would have been obvious in view of the prior art in the petition.  901 F.3d at 1378.  Similarly here, in response to GAS's newly introduced claim construction argument, Sprint introduced evidence from Ahy showing that it disclosed a specific type of parameter (the "antenna selection parameter") that is transmitted from the BSC to the CPE, rendering claims 2, 11, and 20 obvious even  under GAS's more narrow construction.  Appx346 (citing Ahy (Appx1036), 8:53-59).  Just like the Board did here, the Board in *Ericsson* rejected the petitioner's Reply argument on the grounds that it was "a new theory beyond the scope of a proper reply as defined in 37 C.F.R. § 42.23(b)."  901 F.3d at 1379.

Under the same rationale adopted by this Court in *Ericsson*, all of Sprint's Reply arguments were proper, and it was an abuse of discretion for the Board to refuse to consider the Reply in its entirety.  As in *Ericsson*, the Board's error was particularly egregious where "the significance of [beam map] arose after the Petition was filed, in that the Board adopted a different construction of the [beam map] terms after the Petition instituting *inter partes*

16

review was granted.  Additionally, as the missing [beam map] limitation was the essential basis of the Board's decision in concluding that [claim 2] had not been shown unpatentable, [Sprint] should have been given an opportunity to respond." *Id.* at 1380.

GAS cites this Court's decision in *Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359 (Fed. Cir. 2016), but that case is readily distinguishable.  Resp. Br. at 25.  In *Intelligent Bio-Systems*, the petitioner had argued in its IPR petition that the claims were obvious over the combination of two references: Tsien and Zavgorodny.  *Intelligent Bio-Systems,* 821 F.3d at 1369.  In its response, the patent owner had presented evidence that a POSITA would not have combined the references in the way petitioner asserted.  *Id.* at 1368-1369.  In its reply, the petitioner argued for the first time that it would have been obvious to modify Tsien based on new evidence in the form of several non-patent literature references that were not presented in the petition.  The Board refused to consider the reply under 37 C.F.R 42.23(b), and this Court affirmed, because petitioner "relied on an entirely new rationale to explain why one of skill in the art would have been motivated to combine Tsien or Ju with a modification of Zavgorodny." *Id.* at 1370.  Unlike here, *Intelligent Bio-Systems* involved entirely new prior art

that was cited on Reply, and the *Intelligent Bio-Systems* petitioner's new art was not introduced in response to a claim construction argument raised by the patent owner in its Response.

In its brief, GAS complains that it "was not given any opportunity to present evidence in response to this new theory." Resp. Br. at 25-26. Not so. GAS had *several* opportunities to address Ahy. First, Proctor's testimony on Ahy's disclosure of the antenna selection parameter was elicited in response to questions from *GAS*'s own counsel. *See* Appx1265, 45:12-16. When GAS subsequently filed its Response (and the declaration of its expert, Mr. Humphrey), GAS could have addressed Proctor's statements about Ahy's antenna selection parameter in its Response (or in Mr. Humphrey's declaration). GAS chose to do neither. Appx336. And in any event, even after Sprint expanded on this argument in its Reply, GAS did respond to those arguments in its Sur-Reply. Appx382-383. Thus, GAS had ample notice of the evidence on Ahy's beam selection parameter.

Finally, GAS fails to address the Board's erroneous determination that there was no evidence of motivation to combine Ahy and Newman to meet the beam map limitation. As set forth in Sprint's Opening Brief, the Board ignored arguments and evidence presented in Sprint's Petition explaining

why one of ordinary skill in the art would have incorporated Ahy's disclosure of the parameters (sent from the base station to the customer device) into Newman.  Appx129-130; Appx957, ¶ 141.  GAS's silence on this point is telling.

The Board abused its discretion when it refused to consider all of the evidence put forth by Sprint in its Reply.  The Court should vacate the Board's decision that the combination of Newman, Andersson, and Ahy fails to render claims 2, 11, and 20 obvious, and remand for the Board to consider all the evidence and argument on Ahy's disclosure of the "first beam map" of claims 2, 11, and 20.

## III.  The Board's Decision Finding Claims 28 and 29 Not Unpatentable Lacks Substantial Evidence.

The Board's decision refusing to find claims 28 and 29 unpatentable ignores the critical evidence entirely.  Sprint explained that Vornefeld discloses the transmission of multiple channels in a single frame.  *See* Opening Br. 48-52.  The Board (and GAS) ignored the clear evidence in Vornefeld's Figure 3 showing multiple *beams* in the spatial domain, but all within *a single frame*, as demonstrated by the single frame length ($\tau_{\mathbf{frame}}$) of 2 ms at the very top of Figure 3.  Appx1003.  There simply cannot be multiple

19

"spatially separated frames" within a single frame. *See id.* ("[a] *MAC frame* starts with two broadcast channels, the broadcast channel (BCH) and the frame channel (FCH), followed by a downlink phase, an uplink phase, and the random access channels (partitioned, RCH-P, and unpartitioned, RCH-UP)").

Furthermore, Vornefeld's Figure 3 shows *no* spatial separation for the BCH and FCH transmitted to the different MTs, confirming that these are sent in the "same frame" to different MTs in different sectors. *Id.* Vornefeld characterizes the subsequent long channel (LCH) and short channel (SCH) as being part of the same MAC frame as the preceding BCH and FCH. *Id.* It is the *beams*, and not the frames, that are spatially separated in Figure 3. *See id.* ("Figure 3 shows a possible frame structur*e* already considering the spatial dimension, reflected by the parallel use of transport channels."). This is confirmed in other portions of Vornefeld, which describes all terminals in the cell receiving scheduling information for the next MAC *frame* (not "frames"). *See, e.g.,* Appx1004 ("The base station broadcasts this structure on the FCH to inform all the terminals about their individual transmission and reception schedules for the next MAC frame."). The lack of "spatial separation" in the BCH and FCH at the beginning of the MAC frame simply

demonstrates that the same "signaling information concerning the whole radio cell" is being broadcast to every terminal in the cell.  Appx1003.  It does not show that the subsequently "spatially separated" LCH and SCH blocks are in different "spatially separated" frames.

The only "evidence" supporting the Board's position is a single line from Mr. Humphrey's declaration, which GAS parroted in its Response.  *See* Appx1417, ¶ 51 ("The second downlink data identified, however, is in a different, spatially-separated, simultaneous TDD frame but not necessarily in a different sector as required by Claims 28 and 29.")  But Mr. Humphrey provided no basis for this conclusory assertion, so it cannot provide substantial evidence for the Board's decision.  *See Ericsson Inc. v. Intellectual Ventures I LLC*, 890 F.3d 1336, 1346 (Fed. Cir. 2018) ("To contradict a reference, an unsupported opinion is not substantial evidence.")

This Court has emphasized that "substantial evidence" review "involves examination of the record as a whole, taking into account evidence that both justifies and detracts from an agency's decision."  *In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000).  Here, a review of the record in its entirety clearly shows that the record evidence from Vornefeld directly contradicts the Board's position.   Because the only valid evidence shows that Vornefeld

21

discloses downlink data transmitted to different sectors within the *same frame*, the Board's determination for claims 28 and 29 lacks substantial evidence and should be reversed.

## CONCLUSION

This Court should reverse the Board's decision refusing to find claims 2, 11, and 20 (and their dependent claims) obvious. That decision rests on an improperly narrow claim construction, and the undisputed facts require the conclusion that those claims are obvious under the correct construction. In the alternative, the Court should vacate the Board's decision on claims 2, 11, and 20 and their dependent claims. Even under that erroneous claim construction, the Board's decision cannot stand because it improperly ignored Sprint's evidence. Last, the Board's decision refusing to find claims 28 and 29 obvious should be reversed because that decision rests on an unjustifiable misreading of the prior art and thus lacks substantial evidence.

Dated:  October 28, 2019   Respectfully submitted,

        */s/ Brian D. Schmalzbach*
        Brian D. Schmalzbach
        David F. Finkelson
        McGuireWoods LLP
        Gateway Plaza
        800 East Canal Street
        Richmond, VA 23219
        Telephone: (804) 775-4746
        Facsimile: (804) 698-2304
        bschmalzbach@mcguirewoods.com
        dfinkelson@mcguirewoods.com

        *Counsel for Appellant*
        *Sprint Spectrum L.P.*

## CERTIFICATE OF SERVICE

I certify that on October 28, 2019, I filed the foregoing with the Clerk

of this Court using the CM/ECF System, which will send notice of such filing

to all registered CM/ECF users.


*/s/ Brian D. Schmalzbach*
Brian D. Schmalzbach

*Counsel for Appellant*
*Sprint Spectrum L.P.*

24

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Circuit Rule 32(a) because:

- This brief contains 4,517 words, excluding the parts of the brief exempted by Appellate Rule 32(f) and Federal Circuit Rule 32(b).

This brief complies with the typeface and type style requirements of Appellate Rule 32(a)(5) because:

- This brief has been prepared in a proportionally spaced 14-point Book Antiqua font using Microsoft Word.

*/s/ Brian D. Schmalzbach*
Brian D. Schmalzbach

*Counsel for Appellant*
*Sprint Spectrum L.P.*